PEARSON, J.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| KEELAN HARRIS, ) | |
| ) | CASE NO. 4:18CV156 |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE BENITA Y. PEARSON |
| ) | |
| FBOP, *et al.*, ) | |
| ) | |
| Defendants. ) | **ORDER** [Resolving ECF Nos. 12, 32, 37] |

The Complaint in this case, alleging that 15 individual Defendants violated Plaintiff's constitutional rights, was filed on January 19, 2018. ECF No. 1. A portion of the Complaint satisfied initial *in forma pauperis* scrutiny under 28 U.S.C. § 1915(e)(2) on June 7, 2018, and original summonses were issued that same day. ECF Nos. 4, 5. On March 13, 2019, after some difficulty perfecting service of process and a stay in proceedings owing to the government shutdown, Defendants filed the third of three motions to dismiss the complaint for failure to state a claim. ECF Nos. 12, 32, 37. Despite ample time to respond to any or all of those motions to dismiss, Plaintiff has not filed an opposition.

The Court has reviewed Defendants' briefs, the pleadings, and the applicable law. For the reasons stated herein, the motions to dismiss are granted.

## I. Background

In February 2016, Plaintiff filed a complaint alleging unconstitutional interference with his constitutional right to marry his fiancée, and he sought injunctive relief as well as damages

(4:18CV156)

under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). Case No. 4:16-cv-270, ECF No. 1. While that proceeding was pending, Plaintiff decided not to marry, and his injunctive claims were dismissed as moot. Case No. 4:16-cv-270, ECF No. 55; *Harris v. United States*, 2017 WL 3594601, at *2 (N.D. Ohio Aug. 21, 2017). Plaintiff's claims for damages were dismissed without prejudice for his failure to perfect service. Case No. 4:16-cv-270, ECF No. 55; *Harris*, 2017 WL 3594601, at *6.

In January 2018, Plaintiff filed another complaint. ECF No. 1. Although he no longer wishes to marry, he seeks damages under *Bivens* for alleged unconstitutional interference with his right to marry and to freely exercise his religion. *Id.* at PageID#: 11-14. Specifically, he alleges that Defendants violated the First and Fifth Amendments by failing to ensure his ability to obtain a marriage license from the state, either by escorted leave from prison or by some other means. *Id.* at PageID#: 9-10. He also seeks damages for two alleged instances of unconstitutional retaliation: once in response to filing his earlier complaint (in Case No. 4:16-cv-270), and again in response to his filing an internal prison grievance. *Id.* at PageID#: 14-16.

The complaint survived initial screening pursuant to 28 U.S.C. § 1915(e)(2) as to all Defendants except the Federal Bureau of Prisons. ECF No. 4. All remaining Defendants were subsequently served with process, and they filed motions to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). ECF Nos. 12, 32, 37.[1]

---

[1] The motions pertain to three sets of Defendants, but the corresponding briefing is nearly identical in substance for all three. Throughout this Order, the Court cites only to the most recent filing, ECF No. 37, unless otherwise appropriate.

(4:18CV156)

## II. Standard of Review

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must take all well pleaded allegations in the complaint as true and construe those allegations in a light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted). A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in th[e] complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. It must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Twombly*, 550 U.S. at 556. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557 (brackets omitted). "[When] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not

(4:18CV156)

'show[n]' 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)). The Court "need not accept as true a legal conclusion couched as a factual allegation or an unwarranted factual inference." *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 539 (6th Cir. 2012) (citations and internal quotation marks omitted).

### III. Law and Analysis

On a motion to dismiss under Rule 12(b)(6), the Court considers the allegations within the four corners of Plaintiff's complaint; it does not consider evidence in the record. The Court's review is no broader or narrower on a Rule 12(b)(6) motion to dismiss than it is on initial screening pursuant to 28 U.S.C. § 1915(e)(2). Nevertheless, the Court benefits from the parties' briefing, and it may therefore reach a different conclusion on motion than on initial screening.

Plaintiff asserts a right to marry under the First and Fifth Amendments, and he seeks damages for prison officials' alleged refusal to help him obtain a marriage license while incarcerated. ECF No. 1 at PageID#: 11-14. Plaintiff also asserts a First Amendment right to be free from retaliation in response to his filing of a complaint in prior litigation and an internal prison grievance. *Id.* at PageID#: 14-16.

Defendants raise four arguments in favor of their motions to dismiss. Primarily, they argue that, whether or not Plaintiff's constitutional rights were abridged, a *Bivens* remedy is simply not available on the facts alleged and the theory advanced. ECF No. 37-1 at PageID#: 485-93; *see Hernandez v. Mesa*, 137 S. Ct. 2003, 2006 (2017) (whether a right of action exists under *Bivens* is "'antecedent' to the other questions presented" (quoting *Wood v. Moss*, 572 U.S. 744, 757 (2014)). Additionally, Defendants argue that Plaintiff has failed plausibly to allege any violation of constitutional rights, or, at least, that he has failed to allege any violation of clearly

(4:18CV156)

established law.² ECF No. 37-1 at PageID#: 495-99. Defendants also insist that Plaintiff's claims must be dismissed because they are barred by the relevant statute of limitations and because Plaintiff failed to exhaust administrative remedies. Id. at PageID#: 493-95.

**A. Alleged Refusal to Assist in Obtaining a Marriage License**

To obtain a marriage license in Ohio, Plaintiff alleges that an applicant needs to interact directly with someone from the probate court. See ECF No. 1 at PageID#: 9-10. Plaintiff properly initiated FCI Elkton's internal marriage procedures and asked prison officials for an escorted trip to the probate court to obtain a marriage license, but that request was allegedly denied owing to security concerns. Id.; see Ohio Rev. Code § 3101.05. Plaintiff represents that he proposed alternative means to obtain a marriage license, but his proposal was denied. Id. at PageID#: 10. He argues that Defendants' failure to assist him in obtaining a marriage license was a violation of his constitutional right to marry.

The Court observes that, broadly speaking, the Constitution guarantees a substantive right to marry, subject only to reasonable regulations. Zablocki v. Redhail, 434 U.S. 374, 384, 386 (1978). Whether the Constitution also provides a private right of action for damages against federal officials who abridge that right, however, is a different question. See Ziglar v. Abbasi, 137 S. Ct. 1843, 1857 (2017). A private right of action for a constitutional violation by a federal officer is available only in narrowly prescribed circumstances, and "expanding the *Bivens* remedy

---

² "'[I]t is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity.' . . . 'Absent any factual development beyond the allegations in a complaint, a court cannot fairly tell whether a case is "obvious" or "squarely governed" by precedent . . . .'" *Guertin v. State*, 912 F.3d 907, 917 (6th Cir. 2019) (quoting *Wesley v. Cambpell*, 779 F.3d 421, 433 (6th Cir. 2015); *Evans-Marshall v. Bd. of Educ. Of Tipp City Exempted Vill. Sch. Dist.*, 428 F.3d 223, 235 (6th Cir. 2005) (Sutton, J., concurring)).

(4:18CV156)

is now considered a 'disfavored' judicial activity." *Ziglar*, 137 S. Ct. at 1857 (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). "[A] *Bivens* remedy will not be available if there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'" *Id.* at 1857 (quoting *Carlson v. Green*, 446 U.S. 14, 18 (1980)).

The Supreme Court has "consistently refused to extend *Bivens* liability to any new context . . . ." *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001). Even when all agree that a constitutional violation has occurred, a court will not infer a *Bivens* right of action in a "new context" unless there are no "special factors counselling hesitation," such as the existence of an alternative remedial scheme, the adequacy of injunctive or equitable relief, apparently deliberate congressional silence, or sensitive policy issues best left to the political branches. *See Ziglar*, 137 S. Ct. at 1859-63.

Plaintiff's *Bivens* request arises in a new context. In *Turner v. Safley*, 482 U.S. 78, 95-96 (1987), the Supreme Court ruled that the substantive due process right to marry generally extends to prison inmates, but it did not discuss the availability of a private right of action for damages. In *Zundel v. Holder*, 687 F.3d 271, 279-80 (2012), the Sixth Circuit Court of Appeals declined to recognize a *Bivens* right of action for alleged loss of consortium resulting from the plaintiff's husband's deportation. The Court has located no authority, however, discussing the availability of a *Bivens* remedy in the event that a prison inmate plaintiff suffers unconstitutional interference in exercising his right to marry. Plaintiff's *Bivens* claim, therefore, arises in a new context, and the Court must inquire into special factors to assess whether the claim is cognizable.

In this case, nearly all conceivable "special factors" counsel hesitation before inferring a private right of action. Under the Prison Litigation Reform Act, prison inmates are subject to a

(4:18CV156)

well-developed administrative remedial scheme that is equipped to resolve claims such as this. *See* 18 U.S.C. § 3626; *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (The prisoners' remedial scheme "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes . . . ."). Under the Religious Freedom Restoration Act, a plaintiff may bring claims against the government to remedy burdens on free exercise rather than resort immediately to a *Bivens* action. *See* 42 U.S.C. § 2000bb. More generally, prison inmates may also seek injunctive relief through an official-capacity claim to address large-scale policy decisions. *Ziglar*, 137 S. Ct. At 1862; *Malesko*, 534 U.S. at 74. Additionally, the Court observes that "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." *Turner*, 482 U.S. at 84-85.

Plaintiff's *Bivens* claim alleging abridgement of his right to marry arises in a "new context," and given the existence of "special factors counselling hesitation," the Court cannot infer a private right of action even assuming a constitutional violation took place.

### B. Alleged Retaliation in Response to Complaint in Prior Case

Plaintiff also alleges that Defendants unconstitutionally retaliated against him after he asked for assistance in obtaining a marriage license by placing him for 48 hours in the Special Housing Unit ("SHU") with a "hostile and violent inmate." ECF No. 1 at PageID#: 14-15. Plaintiff acknowledges that the official explanation for his 48-hour SHU placement was the officials' belief that he had violated prison rules by running a business. *Id.* at PageID#: 10. He posits, however, that the official explanation was pretextual and that his SHU placement was in

(4:18CV156)

fact a punishment for filing his earlier case (Case No. 4:16-cv-270) and, perhaps, in response to his requests for assistance in obtaining a marriage license. *Id.* at PageID#: 10, 14-15.

There is no freestanding constitutional right to be free from segregated housing in prison. Nevertheless, "[e]ven though a prisoner has no inherent constitutional right to avoid segregated housing . . . the [Bureau of Prisons] may not place the prisoner in segregated housing . . . as a means of retaliating against him for exercising his First Amendment rights." *Hill v. Lappin*, 630 F.3d 468, 473 (6th Cir. 2010). A *Bivens* action by a prison inmate may be sustained if such unconstitutional retaliation is plausibly alleged. *Id.* at 471-73.

To establish a *prima facie* case of First Amendment retaliation, a plaintiff must show that (1) he engaged in protected conduct; (2) he suffered an adverse action which would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by that protected speech or conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Plaintiff undoubtedly engaged in protected conduct when he filed his complaint in the prior case (Case No. 4:16-cv-270). *See Lewis v. Casey*, 518 U.S. 343, 355 (1996). Defendants dispute whether Plaintiff plausibly alleges that his 48-hour SHU placement was an adverse action and, if so, whether he plausibly alleges that the SHU placement was infected with a retaliatory motive.

Plaintiff does not describe the conditions in the SHU, making it difficult to assess from the pleadings whether a short-term SHU placement can fairly be considered an "adverse action" under the circumstances. But the Sixth Circuit has held in the past that placing an inmate in administrative segregation could meet the standard for adverse action. *Herron v. Harrison*, 203 F.3d 410, 416 (6th Cir. 2000); *see Lappin*, 630 F.3d at 474-75. Moreover, Plaintiff alleges that

(4:18CV156)

he was placed in the SHU with a "hostile and violent inmate." ECF No. 1 at PageID#: 10. The Court concludes that a 48-hour segregated placement in close quarters with a person who is known to be violent is sufficiently "adverse" to "deter a person of ordinary firmness" from exercising his right to access the courts. *See Thaddeus-X*, 175 F.3d at 398 (adverse-action standard met when plaintiff suffered "[h]arassment, physical threats, and transfer to the area of the prison used to house mentally disturbed inmates").

Plaintiff, however, lacks factual support for the supposition that the 48-hour SHU placement was done with a retaliatory motive. Plaintiff acknowledges in his complaint that, according to prison records, his SHU placement resulted because Officers Pingatore and Smogovich (not a named Defendant) located "hand drawn pictures of a Cell Phone in [his] folder," and that he subsequently received an incident report from Lieutenant Brinker for "Conducting a Business." ECF No. 1 at PageID#: 10. He suggests that there was no legitimate explanation for his SHU placement because, until that point, he "had a clear record of conduct," and, to his understanding, "the Warden had received a Directive from President Obama to not use the SHU for [low-level offenses]" such as conducting a business in the prison. *Id.*

Plaintiff does not allege that Officer Pingatore, Officer Smogovich, or Lieutenant Brinker had any knowledge of his complaint in the earlier litigation or his requests for assistance in obtaining a marriage license. He does not identify the purported "Directive" to avoid temporary SHU placement or explain why it should have applied to his circumstances,[3] nor does he posit

---

[3] The Court observes that, in January 2016, the Department of Justice published a document titled "Report and Recommendations Concerning the Use of Restrictive Housing," *available at* https://www.justice.gov/archives/dag/report-and-recommendations-concerning-use-restric

(continued...)

(4:18CV156)

that the timing of the SHU placement was unusually suggestive of retaliation. He admits that his placement with a "hostile and violent inmate" was documented as an error, *id.*, and he makes no allegation that the placement was malicious rather than errant. For their part, Defendants explain that "[a]dministrative detention is non-punitive" and includes inmates who are under investigation or awaiting a hearing for possibly violating a prison rule, as Plaintiff acknowledges he was accused of having done. ECF No. 37-1 at PageID#: 484 (citing Bureau of Prisons Program Statement 5270.11(4)(c)(1)).

Plaintiff, therefore, does not plausibly allege that his 48-hour SHU placement was a retaliatory act in violation of the First Amendment.

### C. Alleged Retaliation in Response to Grievance

Finally, Plaintiff alleges that he suffered retaliation in violation of the First Amendment when he filed a grievance complaining about his SHU placement. ECF No. 1 at PageID#: 11, 15-16. He states that he filed a grievance complaining about "the hand cuffing procedure and the fact that [he] was placed into a cell with a Hostile Inmate and that [he] was put in danger for a fictitious . . . Conducting a Business Incident Report." *Id.* He says that he received an additional incident report "for providing a false statement" in his grievance, and that "Mr. Butler and Mr. Cohn sanctioned me . . . ." *Id.*

Plaintiff does not deny that he gave a false statement in his grievance. Nor does he describe what kind of sanction he received. He makes no allegations to support the suggestion

---

³(...continued)
tive-housing. Plaintiff does not explain the content of that Report, nor does he allege or argue that the recommendations contained therein were applicable to his circumstances, nor that they were binding on individual prison wardens, nor that they should give rise to liability of individual officials under *Bivens*.

(4:18CV156)

that his punishment, whatever it was, resulted from anything other than the false statement that he does not deny making.

Plaintiff fails, therefore, to allege a plausible claim of First Amendment retaliation in response to his grievance filing.

## IV.  Conclusion

For the reasons stated herein, Defendants' motions to dismiss for failure to state a claim (ECF Nos. 12, 32, 37) are granted.  A separate dismissal Order shall issue.

IT IS SO ORDERED.

  April 22, 2019      */s/ Benita Y. Pearson*  
Date  Benita Y. Pearson
United States District Judge